# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2773-23

S.M.,[1]

    Petitioner-Appellant,

v.

DEPARTMENT OF HUMAN
SERVICES, DIVISION OF
FAMILY DEVELOPMENT,

    Respondent-Respondent,

and

OCEAN COUNTY BOARD OF
SOCIAL SERVICES,

    Respondent.

_____

Submitted April 20, 2026 – Decided May 22, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from the New Jersey Department of Human Services, Division of Family Development, Docket No. C092417015.

---

[1] We use initials to protect the petitioner's privacy interests. R. 1:38-3(f)(4).

S.M., self-represented appellant.

Jennifer Davenport, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Laura N. Morson, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner S.M., a self-represented litigant, appeals from a final agency decision of the Department of Human Services, Division of Family Development ("DFD"), adopting the initial decision of Administrative Law Judge ("ALJ") Dean J. Buono, finding S.M. received an overpayment of Supplemental Nutrition Assistance Program ("SNAP") benefits in the amount of $24,264.[2] S.M. challenges DFD's determination, alleging various constitutional due process and substantive flaws in the hearing before the ALJ and the Board's reliance on the ALJ's initial determination. Discerning no abuse of discretion or legal error by the Board, whose decision is supported by amply evidence in the record, we affirm.

---

[2] The Supplemental Nutrition Assistance Program was established by Congress in 1964, "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011; N.J.A.C. 10:87-1.1. SNAP benefit eligibility is limited to households "whose incomes and other financial resources, held singly or in joint ownership, are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." 7 U.S.C. § 2014(a).

I.

The following relevant facts are largely undisputed. This matter stems from the Ocean County Board of Social Services' ("OCBSS") determination that petitioner received an overpayment of SNAP benefits in the amount of $24,264.

Petitioner first applied and was approved for SNAP benefits in May 2017, requiring her to complete financial information about her household income. Petitioner resides in the same household with her husband, S.L., and is a recipient of monthly benefits from the Department of Veterans Affairs ("VA"). S.M. submitted applications for SNAP benefits annually, which required her to update her household income and, relevant to these proceedings, between March 2017 and March 2019, S.M. reported S.L.'s VA benefits at $1,635 per month.[3]

According to the DFD, S.M. continued to report that income until May 2020 when she claimed that S.L.'s benefits had increased to $1,728. Three months later, however, S.M. reported that S.L.'s income had in fact decreased to $1,644, approximately ten dollars more than it was in March 2019.

Following S.M.'s revision of S.L.'s income, OCBSS initiated an investigation into the couples' household income, and discovered S.L.'s

---

[3] S.L. is not a named party in this action. However, as a household member, his income is at issue here. S.L. also testified in the hearing before the OCBSS.

A-2773-23

undisclosed United States Automobile Association ("USAA") account, which was held solely in his name, and showing annual deposits of income in excess of $40,000 each from 2017 through 2020, when the parties were also receiving SNAP benefits. More particularly, OCBSS ultimately determined that S.M.'s household received "undisclosed VA deposits as follows: $40,371.34 in 2017; $41,139.07 in 2018; $42,317.83 in 2019; and $42,984.46 in 2020." These reports reflect income that made the household ineligible for SNAP benefits.

When DFD advised S.M. that she would be required to reimburse them for the overpaid benefits and the amount owed, S.M. requested a hearing to contest the determination and amount of the claimed overpayment.[4] The matter was transmitted to the Office of Administrative Law ("OAL") as a contested hearing, pursuant to Administrative Procedure Act ("APA"), N.J.S.A 52:14B-1 to -15.

The matter was assigned to ALJ Buono and initially scheduled for a telephonic hearing on September 15, 2023, at which time S.M. requested an adjournment, seeking additional time to obtain allegedly undisclosed documents. The hearing eventually commenced on January 3, 2024 with all

[4] The OCBSS issued a notice to appellant on April 15, 2023, informing her of her obligation to repay the inadvertent household error overissuance of $24,264 of SNAP benefits.

4

parties appearing in-person. S.M. presented the testimony of S.L. and noted that she would be relying on his testimony. S.L.'s testimony consisted of complaints regarding the Board's proceed and investigation, claiming due process and Fourth Amendment violations, OCBSS's investigators conspired to withhold information from them, and provided invalid subpoenas to obtain their personal banking information that they were not entitled to in violation of federal and state law.

DFD presented Renee Savage as its sole witness, who testified that although S.M. submitted an August 2020 Fulton Bank statement reflecting a $1,727.21 VA deposit, OCBSS subpoenaed additional financial records revealing no such deposit.

Nearing the conclusion of the trial, S.M. through S.L., asked the ALJ to subpoena multiple OCBSS employees to question them about their investigation. The ALJ, however, denied their request and concluded the matter on that day.

The ALJ issued a comprehensive written decision, summarizing the testimony of the witnesses, setting forth the applicable law and engaging in a thorough and compelling legal analysis. The ALJ began by explaining the categories of overpayment claims against household members, noting that

County Welfare Agencies "must collect overpayments, regardless of who is at fault," whether the overpayment arises from: (1) an intentional program violation claim; (2) an inadvertent household error claim; or (3) an agency error claim. The ALJ next discussed the laudable goals of the SNAP program, noting that SNAP was designed to promote the general welfare and to safeguard the health and well-being of the population by raising the levels of nutrition among low-income households pursuant to N.J.A.C. 10:87-1.1.

The ALJ further noted that the amount of SNAP benefits a household receives is "based upon the number of people in the household and the household's countable income," which is defined as "'all income from whatever source unless such income is specifically excluded." The ALJ next determined S.L.'s VA benefits do not qualify as excludable income under N.J.A.C. 10:87-5.3, and further S.M. did not advance this argument.[5]

The ALJ concluded "the petitioners' earned income due to S.L.'s [VA] benefits and S.M.'s income" were not correctly reported to the Board, "OCBSS was thus unable to accurately compute the SNAP benefits . . . awarded benefits

---

[5] Referring to the categories of income excluded from SNAP eligibility calculations under N.J.A.C. 10:87-5.3, the ALJ found that VA benefits are not among the enumerated exclusions, and therefore, constituted countable household income for purposes of determining SNAP eligibility and any resulting overpayment.

when the household was ineligible." The ALJ rejected all claims of procedural and code violations, emphasizing most significantly that "neither S.L. nor S.M. ever addressed the amount of overissuance or whether there was an actual overissuance at all," and instead "simply addressed nonexistent procedural issues, federal codes including the [Uniform Commercial Code], as well as case law that is inapplicable." The ALJ concluded that the statutory mandate to recoup overpayments, even when the recipient is not at fault, includes the ability to obtain bank records, thus, petitioners are "obligated to repay $24,264, the full amount of the SNAP overpayment. The parties filed exceptions, which were reviewed by the DFD's Commissioner, although S.M. now argues on appeal that the procedures surrounding the filing and consideration of those exceptions deprived her of a full opportunity to be heard.

The Commissioner concurred with the ALJ's initial decision, characterizing it as "thorough and comprehensive" for providing a detailed factual timeline, "outlining the applicable law, and then applying the law to [the] fact[s]." The Commissioner further emphasized S.L.'s testimony before the ALJ, noting his failure "to address the amount of overissuance or whether an overissuance had occurred at all." S.M. appealed.

A-2773-23

II.

Our review of an administrative agency's decision is limited. We will disturb the agency's decision only if it is "arbitrary, capricious or unreasonable," or is unsupported "by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011). We further recognize the Commissioner has "complete discretion" to determine an inmate's placement and custody status. Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 29 (App. Div. 2001) (citing N.J.S.A. 30:4-91.2). Nonetheless, we will find an abuse of discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "[I]t is a fundamental of fair play that an administrative judgment express a reasoned conclusion . . . [which] requires evidence to support it and findings of appropriate definiteness to express it." N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 375 (1950) (internal citation omitted).

As a threshold matter, New Jersey counties are responsible for certifying eligible households and administering SNAP benefits; however, the State "is ultimately responsible for ensuring that program operations conform with

8

Federal laws and [United States Department of Agriculture] regulations." N.J.A.C. 10:87-1.2. In accordance with this mandate, the Commissioner of the Department of Human Services has adopted comprehensive rules and regulations governing financial eligibility, pursuant to N.J.S.A. 44:10-85 and the APA. N.J.S.A 52:14B-1 to -31; N.J.A.C. 10:87-5.1 to -5.11.

To determine a household's eligibility for SNAP benefits, an applicant must cooperate with the county, which includes verifying the household's "gross nonexempt income." N.J.A.C. 10:87-2.14. Gross nonexempt income refers to "all income from whatever source unless such income is specifically excluded[.]" N.J.A.C. 10:87-5.3; N.J.A.C. 10:87-5.8. Relevant here, VA benefits are not specifically excluded from household income under N.J.A.C. 10:87-5.9.

In addition, beneficiaries must report "all income currently being received by all members of the household and any income changes or additions which the household anticipates" at the time of certification or recertification. N.J.A.C. 10:87-5.2; N.J.A.C. 10:87-5.9. All applications and recertification forms must contain "understandable terms that benefits will be <u>subject to verification by Federal, State and local officials</u> to determine that the information is factual and

that incorrect information can lead to . . . civil and criminal penalties."  N.J.A.C. 10:87-2.13(a).  (emphasis added).

It is also well-settled that when SNAP benefits are overpaid, counties are obligated to seek repayment.  N.J.A.C. 10:87-11.20.  There are three types of claims against households when benefits are overpaid:  (1) an intentional program violation claim; (2) an inadvertent household error claim; and (3) an agency error claim.  N.J.A.C. 10:87-11.20(e); 7 C.F.R. § 273.18(b).  The county is required to recoup the overissuance, regardless of the cause.  Ibid.  Counties therefore have "no discretion whatsoever with regard to seeking recovery of overpayments of public assistance funds or over[]issuances" and "states are subject to severe sanctions, not merely state reduction of participation in the program, but state liability for the overissuance[], should a state fail to recover or make good faith efforts to recover."  Childs v. Essex County Div. of Welfare, 236 N.J. Super. 127, 141 (App. Div. 1988) (holding recovery of SNAP overpayments is mandatory, regardless of fault) (citing 7 C.F.R. §§ 275, 276).

When an overissuance is discovered, the county board of social services and/or DFD is required to provide the household with written notification of the claim before they "begin collection action on any claim."  7 C.F.R. § 273.18(3). Unless the amount of the claim is established at a fair hearing, the agency must

notify the household that they are entitled to request a fair hearing on the decision related to the claim and that they have ninety days to request a fair hearing. 7 C.F.R. § 273.18(3)(iv)(I). The written notice must also include "a time frame to either repay or make arrangements to repay the claim." 7 C.F.R. § 273.18(3)(iv)(N).

Before us, S.M. argues that the final agency decision must be vacated and the matter remanded because the DFD failed to respond to her petition for a time extension to file an exception, thereby depriving them of the opportunity to be heard. We reject S.M.'s alleged procedural deficiencies in the proceedings. On the contrary, we are satisfied that S.M. was afforded proper notice of the claims against her and granted a hearing before an ALJ consistent with N.J.A.C. 10:87-8.6 and 7 C.F.R. § 273.15, which govern fair hearing procedures in SNAP overpayment matters. Under these circumstances, we discern no merit to S.M.'s constitutional challenges and affirm the DFD's final agency decision substantially for the reasons stated in the ALJ's comprehensive initial decision adopted by the DFD.

We further reject S.M.'s claims the ALJ erred by failing to grant her additional time to file exceptions, concluding instead that nothing precluded S.M. from filing exceptions between January 19, 2024, (the date of the petition

for a time extension), and March 28, 2024, (the date of the final agency decision).

Also, critical to our conclusion is that neither S.M. nor S.L. ever disputed the actual overpayment of SNAP benefits, or the specific amount of the overpayment sought by the county, as noted by the ALJ and adopted by the DFD. It therefore stands to reason that despite any alleged procedural deficiencies, S.M. accepted DFD's contention that she and her household were the recipients of SNAP benefits to which they were not entitled and the law compelled them to make reimbursement to the county. See Childs, 236 N.J. Super. at 141. Accordingly, DFD properly entered the putative order against S.M. and ordered reimbursement of $24,264. S.M.'s argument that the subpoena used to obtain S.L.'s bank records was illegal because it violated the RFPA is meritless because the RFPA only applies to administrative subpoenas issued by federal government agencies. See 12 U.S.C. § 3401(3) (defining "government authority" as "any agency or department of the United States, or any officer, employee, or agent thereof[.]); 12 U.S.C. § 3405 (discussing the circumstances under which a "government authority" may obtain financial records pursuant to an administrative subpoena or summons). Thus, S.M.'s assertion that she or her

A-2773-23

husband were entitled to notice of the DFD's subpoena under the RFPA is legally incorrect.

To the extent we have not specifically addressed any of S.M.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Nothing in this opinion precludes S.M. and the DFD from working out a plan for repayment in installments. The existing stay of the final agency decision shall expire on June 8, 2026, unless it is extended further by the Supreme Court on application.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

13

A-2773-23